**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| MATTHEW REED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO.: |
| v. | ) | 1:21-cv-3563 |
| | ) | |
| BEKO TECHNOLOGIES CORP, | ) | The Honorable |
| | ) | William M. Ray, II |
| Defendant. | ) | |

## DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT NOTWITHSTANING THE VERDICT OR, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL OR REMITTITUR

Defendant, BEKO Technologies, Corp., ("Defendant" or "BEKO") by and through its undersigned counsel hereby submit the following Memorandum in Support of its Motion for Judgment Notwithstanding the Verdict or in the Alternative, Motion for a New Trial or Remittitur, and so states as follows:

BEKO is entitled to judgment as a matter of law on Plaintiff's claim for punitive damages because Plaintiff failed to present any evidence that BEKO engaged in malicious or recklessly indifferent conduct to entitle him to such an award. Rather, the evidence shows that BEKO valued Plaintiff as an employee and seriously considered any concerns that he may have had throughout his employment.

Because of this, the jury could not have had a legally sufficient evidentiary basis to grant Plaintiff punitive damages.

BEKO is also entitled to judgment as a matter of law as to Plaintiff's underlying retaliation claim under Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981") because based on Plaintiff's uncontroverted admissions, there was not sufficient evidence for the jury to find that Plaintiff suffered a materially adverse employment action or that there was "but for" causation. As further detailed below, Plaintiff cannot establish that he was subject to a materially adverse employment action by BEKO's Chief Executive Officer, Tito Fruth allegedly requesting his resignation. Mr. Fruth's conduct is not materially adverse because it did not deter Plaintiff from making a complaint of discrimination. In fact, Plaintiff allegedly complained of discrimination **after** Mr. Fruth allegedly demanded his resignation in 2019. Plaintiff also cannot establish an adverse employment action because the demand of someone's resignation and a voluntary resignation are not adverse employment actions.

BEKO is further entitled to judgment as a matter of law because Plaintiff failed to establish a "but for" causal link between Plaintiff's alleged protected activity and Mr. Fruth's alleged request for his resignation because, according to Plaintiff's own testimony, Mr. Fruth had demanded his resignation several times

prior to him engaging in any alleged protected activity. Since Mr. Fruth's alleged demands occurred several times prior to him engaging in any alleged protected activity, there can be no "but for" causation.

For these reasons BEKO respectfully renews its Rule 50(a) motion and asks this Court to rule in its favor on Plaintiff's request for punitive damages and his Section 1981 retaliation claim.

In the alternative, BEKO requests a new trial pursuant to Rule 59(a)(1)(A) on the grounds that the verdict is against the clear weight of evidence and also because the Court improperly admitted, over BEKO's objection, the testimony of Phillip Carroll. Further, if the Court does not enter judgment in BEKO's favor pursuant to Rule 50(b) or grant BEKO's request for a new trial pursuant to Rule 59(a)(1)(A), it should exercise its discretion to reduce the amount of damages awarded to Plaintiff because the jury's damages award was excessive and against the weight of evidence since Plaintiff did not prove the requisite elements for a retaliation claim or put forth sufficient evidence to justify the jury's emotional distress or punitive damages award.

## STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

In his lawsuit, Plaintiff brought claims of discrimination and retaliation under Section 1981. (ECF No. 1). On January 13, 2023, this Court disposed of Plaintiff's

discrimination claim, leaving Plaintiff's claim of retaliation as the only claim to be tried before a jury. (ECF No. 38). On June 3, 2024, Plaintiff's Section 1981 retaliation claim was brought before this Court and a jury for trial. Plaintiff contends that he was subject to unlawful retaliation during a call with Mr. Fruth on August 3, 2021 when Mr. Fruth allegedly directed Plaintiff to tender his resignation after he had complained about race-based treatment. Plaintiff further claims that he was terminated as a result of his complaints. BEKO denies these claims.

At the close of Plaintiff's evidence, BEKO moved for a directed verdict as to Plaintiff's Section 1981 retaliation claim and Plaintiff's claim for punitive damages. (Day 2 Trans. 277:25-287:17). BEKO's motion addressed, among other things, Plaintiff's failure to present sufficient evidence that he suffered an adverse employment action and that there was a "but for" causal link between any alleged protected activity and any alleged adverse employment action. (Day 2 Trans. 277:25-287:17). BEKO's motion also addressed Plaintiff's failure to present substantial evidence of BEKO engaging in malicious or recklessly indifferent conduct to entitle him to punitive damages. (Day 2 Trans. 277:25-287:17). Following the close of all evidence, BEKO renewed its motion.

Despite Plaintiff's failure to produce sufficient evidence to meet his burden of proof that he was subject to unlawful retaliation under Section 1981 or that he was

entitled to punitive damages, the jury returned a verdict in favor of Plaintiff and awarded him $84,724.46 in compensatory damages and $450,000 in punitive damages. (Day 2 Trans. 386:12-17). As detailed herein, the jury's verdict must be overturned because it is against the weight of evidence.

## STANDARDS OF REVIEW

The standard for granting a renewed motion for judgment as a matter of law pursuant to Rule 50(b) is exactly the same as the standard for granting the initial motion for judgment as a matter of law under Rule 50(a):  whether the evidence is legally sufficient to find for the party on that issue.  *Chaney v. City of Orlando*, 483 F.3d 1221, 1227 (11th Cir. 2007) (quoting 9A C. WRIGHT AND A. MILLER, FEDERAL PRACTICE & PROCEDURE § 2537 (2d ed. 1995)).  Although the court "must evaluate all the evidence, together with any logical inferences, in the light most favorable to the non-moving party," *Beckwith v. City of Daytona Beach Shores*, 58 F.3d 1554, 1560 (11th Cir. 1995), the motion may be granted "if the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict." *Keiser v. Coliseum Properties, Inc.*, 764 F.2d 783 (11th Cir. 1985).

Alternatively, pursuant to Rule 59(a), a district judge may grant a new trial "if in his opinion, the verdict is against the clear weight of the evidence . . . or will result in miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir. 1984). The standard for granting a motion for a new trial is simply the sound discretion of the trial judge. *United States v. Champion*, 813 F.2d 1154, 1170 (11th Cir. 1987). With respect to the admission or exclusion of evidence, the central issue is "how much of an effect did the improperly admitted or excluded evidence has on the verdict?" *Peat, Inc. v. Vanguard Research, Inc.*, 378 F.3d 1154, 1162 (11th Cir. 2004)). A new trial is warranted if an evidentiary affected substantial rights or caused substantial prejudice. *Smart v. City of Miami*, 740 F. App'x 952, 966 (11th Cir. 2018).

A district judge may also remit the jury's award under Rule 59 "when [he] believes the jury's award is unreasonable on the facts." *Johansen v. Combustion Engineering, Inc.*, 170 F.3d 1320, 1331 (11th Cir. 1999). A remittitur is "the appropriate remedy where the jury's damage award exceeds the amount established by the evidence." *Goldstein v. Manhattan Indus., Inc.*, 758 F.2d 1435, 1448 (11th Cir. 1985).

## **ARGUMENT**

-6-

I.     **BEKO Is Entitled To Judgment As A Matter Of Law On Plaintiff's Claim For Punitive Damages Because Plaintiff Did Not Present Substantial Evidence That BEKO Engaged In Malicious Or Recklessly Indifferent Conduct.**

The was no evidence presented at trial that BEKO engaged in malicious or recklessly indifferent conduct to support Plaintiff's claim for punitive damages.

An award of punitive damages on a Section 1981 claim, must be supported by substantial evidence that the employer acted with malice or reckless indifference. *See Ferrill*, 168 F.3d at 476 ("Under § 1981, punitive damages may be awarded when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." (quotation marks omitted)); *see also Miller v. Kenworth of Dothan, Inc*., 277 F.3d 1269, 1280 (11th Cir.2002) (holding that a plaintiff with a § 1981 claim must present "substantial evidence that the employer acted with actual malice or reckless indifference to his federally protected rights"); *Bryant v. Jones*, 575 F.3d 1281, 1296 n. 20 (11th Cir.2009) (noting that "discrimination claims ... brought under the Equal Protection Clause, 42 U.S.C. § 1981, are subject to the same standards of proof and employ the same analytical framework"). "Malice means an intent to harm and recklessness means serious disregard for the consequences of one's actions." *E.E.O.C. v. W & O, Inc.*, 213 F.3d 600, 611 (11th Cir.2000) (alteration and quotation marks omitted). "Punitive damages are disfavored by the

law and are awarded solely to punish defendants and deter future wrongdoing." *Ferrill*, 168 F.3d at 476.

Plaintiff failed to present substantial evidence that BEKO engaged in malicious or recklessly indifferent conduct to warrant an award for punitive damages. Indeed, quite the opposite is true. The testimony is clear that BEKO valued Plaintiff as an employee and seriously considered any concerns that he may have had. Throughout Plaintiff's employment, BEKO gave Plaintiff several raises. (Day 2 Trans. 251: 16-17). In total, Plaintiff received a 30% increase in pay, which was approved by Mr. Fruth. (Day 2 Trans. 258: 17-25). Plaintiff was also the highest paid Production Technician in his department. (Day 2 Trans. 259: 1-3). Additionally, when Plaintiff had a complaint about his interactions with Andrew Davis, Ms. Jaunch escalated his concerns to Mr. Fruth and even recused herself from the situation so that there would be no perceived bias[1]. (Day 2 Trans. 317: 3-16). Mr. Fruth also did not ignore Plaintiff's complaint, he called Plaintiff personally to address his concerns. (Day 2. Trans. 317:24-25).

Even though Plaintiff claims that Mr. Fruth demanded his resignation during the August 3, 2021 phone call, his demand was not malicious. There are no facts to

---

[1] Ms. Jaunch was Mr. Davis' direct supervisor and did not want Plaintiff to feel that she would not be neutral due to their working relationship. (Day 2 Trans. 317:3-16).

support that Mr. Fruth's statements were made with malicious intent. There is no evidence that Mr. Fruth used any racial, derogatory, or threatening language during this phone call in order for the jury to infer malicious intent from Mr. Fruth's statements. Additionally, according to Plaintiff, Mr. Fruth has made similar statements in the past, but Plaintiff does not allege that those previous statements were made with malicious intent. (Day 2 Trans. 257:25-258:10). As a result, Mr. Fruth allegedly repeating those same statements is also not malicious. Based on all of this, it is evident that BEKO did not act with malice or reckless indifference towards Plaintiff. The jury's award is therefore against the weight of evidence and BEKO is entitled to judgment as a matter of law regarding his claim for punitive damages and the jury's award for $450,000 must be overturned .

## II.    BEKO Is Entitled To Judgment As A Matter Of Law Because Plaintiff Failed To Prove Each Element Of His Section 1981 Retaliation Claim.

BEKO is also entitled to judgment as a matter of law as to Plaintiff's Section 1981 retaliation claim because Plaintiff did not present sufficient evidence that there was a "but for" causal link between his alleged complaint of race discrimination and any alleged adverse employment action. To establish a claim of retaliation under Section 1981, Plaintiff must have proven that: (1) he engaged in a statutorily protected activity; (2) he suffered a materially adverse action; and (3) there was a "but for" causal relation between the protected activity and adverse action. *See*

*Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008) (*citing*

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006); *see also Comcast*

*Corp. v. Nat'l Ass'n of African Am.-Owned Media*, No. 18-1171, 2020 U.S. LEXIS

1908, at *21 (March 23, 2020) (rejecting motivating factor analysis for § 1981

claims).

### a. Plaintiff Failed To Present Sufficient Evidence That He Was Subject To An Adverse Employment Action.

Plaintiff claims that he suffered an adverse employment action when Mr.

Fruth allegedly demanded that Plaintiff tender his notice and resign from his

employment. BEKO denies that Mr. Fruth ever made such statements. However,

even if Mr. Fruth did demand Plaintiff's resignation, his demand is not sufficient to

establish a materially adverse employment action.

The Eleventh Circuit applies the "materially adverse" standard from

*Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 57 (2006) to Section 1981

claims. *See Gant v. Kash'n Karry Food Stores, Inc.*, 390 F. App'x 943, 945 (11th

Cir. 2010) (citing Burlington's "materially adverse" element for Title VII and § 1981

retaliation claims). An action is "materially adverse" if it "well might have dissuaded

a reasonable worker from making or supporting a charge of discrimination."

*Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 57 (2006).

No reasonable jury could have found that Mr. Fruth's statements, would have deterred a reasonable employee from making a complaint. In fact, the evidence shows that it did not deter Plaintiff from making an alleged complaint of discrimination. According to Plaintiff's own testimony, back in 2019 or 2020[2] (long before Plaintiff's August 3, 2021 call with Mr. Fruth), on two separate occasions, Mr. Fruth told Plaintiff to resign:

> Q Okay. And you would agree with me, wouldn't you, Mr. Reed, that there were prior times in your employment with Beko where you were told to resign before; right?
> A Yes.
> Q It happened in 2019?
> A I wouldn't say 2019. I'll say 2020.
> Q There were two separate times where somebody told you to resign; correct, before Mr. Fruth allegedly said --
> A It was 2020 both times.
> Q And you didn't resign those times?
> A No. (Day 2 Trans. 257:25-258:10).

Mr. Fruth therefore told Plaintiff to quit **before** he allegedly complained of race-based discrimination. (Day 2 Trans. 257:25-258:10). It was only after Mr. Fruth allegedly made those statements did Plaintiff allegedly complain of discrimination. (Day 2 Trans. 257:25-258:10). Accordingly, Mr. Fruth's statements could not have deterred him from filing a complaint because that is exactly what Plaintiff did after

---

[2] During Plaintiff's deposition, Plaintiff claimed that Mr. Fruth requested his resignation in 2019. (Day 2 Trans. 257:25-258:10; 272:5-10). However, at trial, Plaintiff claimed that these previous requests were actually made in 2020. (Day 2 Trans. 257:25-258:10; 272:5-10).

Mr. Fruth allegedly made such statements. Because Mr. Fruth's statements in 2019 did not deter Plaintiff from allegedly making a complaint on August 3, 2021, his alleged recitation of that demand on August 3, 2021, could not be considered materially adverse.

Moreover, the Eleventh Circuit has held that the threat of termination, which is far less than what Plaintiff claims here, is not an adverse employment action. *Williams-Evans v. Advance Auto Parts*, 843 Fed. Appx. 144, 149 (11th Cir. Jan. 7, 2021) (finding that "a threat of termination, without more, is not a "materially adverse" employment action); *Van Der Meulen v. Brinker Int'l*, 153 Fed.Appx. 649, 655 (11th Cir. 2005) (holding that a threat did not in fact cause any objective change in the plaintiff's employment); *Bozeman v. Per-Se Technologies, Inc.*, 456 F. Supp. 2d 1282, 1360 (N.D. Ga. 2006) (same). Because Mr. Fruth's alleged requests do not nearly rise to the level of a threat, his statements cannot be considered materially adverse.

Additionally, Plaintiff cannot establish an adverse employment action because Plaintiff voluntarily resigned. It is well established that voluntary resignation is not an adverse employment action. *See Santandreu v. Miami Dade Cty.*, 513 F. App'x 902, 906 (11th Cir. 2013). During trial, Plaintiff testified that during the August 3, 2021 call that he in fact gave notice of his resignation:

> A […] But Tilo said, look. He asked me this maybe seven or
> eight times or -- well, more. Go ahead on, e-mail Melanie, copy
> me on it. **And, you know, I got tired. I said okay, like that**.[3]
> (Day 2 Trans. 246: 23-25).

Despite Mr. Fruth's alleged requests, Plaintiff's resignation was still voluntary. Plaintiff had no reason to believe that his employment would be terminated if he refused Mr. Fruth's alleged requests. Mr. Fruth testified that during their August 3, 2021 call, he did not make any statements that would have caused Plaintiff to believe that his employment was in jeopardy:

> Q At any point during that phone call, Tilo, did you say
> anything that would have caused Mr. Reed to believe his job
> was in jeopardy?
> A No.
> Q Did you tell him he was fired?
> A No.
> Q Did you tell him that you were terminating him?
> A No.
> Q Did you tell him you better quit or else?
> A No. (Day 2 Trans. 3:13-22).

Plaintiff does not contest this. During trial, Plaintiff admitted that Mr. Fruth did not say he was being fired or discharged:

> Q You would agree with me that nobody at Beko used the word

---

[3] Plaintiff separately argues that his oral resignation was not effective because he did not resign in writing. However, Plaintiff was not required to do so pursuant to the Employment Agreement. The Employment Agreement states that "[t]he termination of the employment agreement can only be announced in writing." It does not state who must announce the termination or impose that the resigning employee must do this. Nevertheless, this "requirement", to the extent there was one, was satisfied by BEKO when Ms. Jaunch emailed Plaintiff confirming receipt of his oral resignation, which Plaintiff did not contest.

"fired" to you in August of 2021; correct?
A Fired, no.
Q Nobody used the word "discharged" with you?
A No. (Day 2 Trans. 274: 5-9).

Mr. Fruth had no intention on terminating Plaintiff's employment. At trial, Mr. Fruth testified about how good Plaintiff was at his job and how essential he was for operations. (Day 2 Trans. 330:5-9). For instance, Mr. Fruth testified that Plaintiff was the only one who could operate certain machinery and without him, the company would have, and did suffer a hardship. (Day 2 Trans. 335:1-7). Moreover, Plaintiff clearly understood that he could refuse Mr. Fruth's alleged request because such a request was allegedly made in 2019 and Plaintiff remained employed and well compensated. (Day 2 Trans. 273:20-23).

Because Plaintiff failed to put forth evidence that he suffered an adverse employment action, BEKO is entitled to judgment as a matter of law as to Plaintiff's Section 1981 claim.

**b. Plaintiff Failed To Present Sufficient Evidence Of A "But For" Causal Link Between His Complaint And Any Alleged Adverse Employment Action.**

To meet his burden of proof, Plaintiff must have shown a "but for" causal link between his alleged protected activity and any alleged adverse employment action. "But for" causation, "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."

*Cox v. Fulton Cnty. Sch. Dist.*, No. 1:19-cv-04520-JPB-RGV, 2020 U.S. Dist. LEXIS 100680 at **29-30 (N.D. Ga. May 22, 2020) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 570 U.S. 338, 352(2013)). The "but for" causal requirement is much more demanding than the "motivating" factor standard. *Id.* "Thus, the plaintiff always has the burden of persuasion 'to proffer evidence sufficient to permit a reasonable fact finder to conclude that discriminatory animus was the 'but-for' cause of the adverse employment action." *Smith v. City of Fort Pierce,* 565 Fed. Appx. 774, 778-779(11thCir. 2014)(quoting *Sims v. MVM, Inc.,* 704 F.3d 1327, 1332 (11th Cir. 2013)).

Plaintiff cannot establish but-for causation because, according to him, Mr. Fruth's repeated requests for Plaintiff's resignation occurred **<u>before</u>** Plaintiff's alleged complaint of race discrimination. As stated, Plaintiff alleges that he was subject to an adverse employment action by Mr. Fruth's repeated requests for his resignation. However, based on Plaintiff's own admissions, Mr. Fruth allegedly made such requests in 2019 before he allegedly engaged in protected activity. (Day 2 Trans. 257:25-258:10).

Protected activity that occurs after an adverse employment decision cannot be the "but for" cause of the decision. *Cox,* 2020 Dis. LEXIS 100680 at *30 (citing *Hopkins v. Saint Lucie Cty. Sch. Bd.,* 399 F. App'x 563, 566-67 (11th Cir. 2010).

Moreover, "when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity . . . does not suffice to show causation." *Jurriaans v. Ala. Coop. Extension Sys.,* 806 Fed. Appx. 753, 757 (11th Cir. March 23, 2020) (citing *Drago v. Jenne,* 453 F.3d 1301, 1308 (11th Cir. 2006)). Here, because Plaintiff admits that Mr. Fruth had allegedly demanded his resignation prior to the August 3, 2021 call, Plaintiff's alleged complaint of race discrimination could not have been the "but for" cause of Mr. Fruth's alleged demands. BEKO is therefore entitled to judgment as a matter of law for this additional reason.

### III. In The Event That This Court Denies BEKO's Motion For Judgment Notwithstanding The Verdict, BEKO Is Entitled To A New Trial.

#### a. BEKO Is Entitled To A New Trial Because The Jury's Verdict Was Against The Weight Of The Evidence.

BEKO is entitled to a new trial because the jury's verdict was against the weight of evidence. For the same reasons detailed above, Plaintiff failed to present sufficient evidence of each element of his Section 1981 claim or to establish that he was entitled to punitive damages. Accordingly, this Court should grant BEKO a new trial.

#### b. BEKO Is Entitled To A New Trial Because The Court Erred In Allowing The Testimony Of Phillip Carroll.

BEKO is also entitled to a new trial because the Court improperly admitted the testimony of Phillip Carroll. [4] Pursuant to Rule 608, "a witnesses credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character." Fed. R. Evid. 608. However, "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602.

The factual record is clear that Mr. Carroll was unqualified to testify to Mr. Fruth's character for untruthfulness. While Mr. Carroll has been familiar with Mr. Fruth for several years, he has no personal knowledge of Mr. Fruth ever being untruthful. During this Court's voir dire of Mr. Carroll, this Court asked him what his opinion about Mr. Fruth's untruthfulness is based on. (Day 2 Trans. 291:24-292:3). Mr. Carroll responded with three circumstances that were not responsive to the Court's inquiry. First, Mr. Carroll testified that after BEKO terminated Mr. Carroll's employment for insubordination, Mr. Fruth allowed him to tell his

---

[4] Plaintiff sought to offer Mr. Carroll's testimony about both his opinion and Mr. Furth's reputation for untruthfulness. This Court ordered that Mr. Carroll was only able to testify as to his opinion about Mr. Fruth's character for untruthfulness because Mr. Carroll was not competent to testify to Mr. Fruth's reputation as he has no factual basis to make such determination. (Day 2 Trans. 306:14-25). This Court should have prohibited Plaintiff from testifying all together because he is similarly unqualified to form an opinion as to Mr. Fruth's character for untruthfulness.

colleagues that he resigned. (Day 2 Trans. 292:2-8). This incident does not establish that Mr. Carroll has any personal knowledge about Mr. Fruth's untruthfulness because Mr. Carroll does not claim that Mr. Fruth made any false statements about the reason for his termination. In fact, Mr. Carroll testified that Mr. Fruth actually informed him of the reason for his termination.

Second, Mr. Carroll testified that he could not determine the veracity of Mr. Fruth's statement that Plaintiff had complained about Mr. Carroll contacting him on LinkedIn after Mr. Carroll was terminated from BEKO. (Day 2 Trans. 295:3-9). Since Mr. Carroll testified that he did not verify whether Mr. Fruth was truthful or not, this incident also fails to establish his personal knowledge of Mr. Fruth's untruthfulness.

Lastly, Mr. Carroll testified that Mr. Fruth told him that Markus Mueller was involved in the decision to terminate his employment, but Mr. Mueller denied this to Mr. Carroll. (Day 2 Trans. 295:10-17). This incident also fails to establish Mr. Carroll's personal knowledge of Mr. Fruth's untruthfulness because Mr. Carroll does not know whether it was Mr. Fruth or Mr. Meuller being untruthful about Mr. Meuller's involvement in the termination decision. Based on this, none of these incidents demonstrate that Mr. Fruth was untruthful or present a credible basis for

which Mr. Carroll can hang his opinion on. Yet, this Court permitted Mr. Carroll to give his opinion about Mr. Fruth's character for untruthfulness.

The admission of Mr. Carroll's testimony ultimately prejudiced BEKO and its defense of the case. This case turned on the credibility of Fruth and exposing the jury to Mr. Carroll's unsupported testimony clearly caused the jury to disbelieve Fruth's testimony. BEKO could not adequately defend itself against Mr. Carroll's testimony because there was no factual basis to support his opinion. For these reasons, this Court should not have admitted the testimony of Mr. Carroll. BEKO is entitled to a new trial for this additional reason.

**IV.    In The Event That This Court Denies BEKO's Motion For Judgment Notwithstanding The Verdict And BEKO's Motion For A New Trial, This Court Must Remit The Jury's Damages Award.**

This Court should use its discretion to remit Plaintiff's damages award because it is not in line with the evidence established.

At trial, the jury granted Plaintiff $84,724.46 in compensatory damages. (Day 2 Trans. 286:12). However, Plaintiff did not present sufficient evidence to entitle him to this award. The award of damages bore no rational relationship to any anguish or upset caused solely by BEKO's conduct. The only distress that Plaintiff has claims to experienced after his call with Mr. Fruth, is anxiety and loss of sleep. (Day 2 Trans. 252: 9-15; 276:5-8). However, Plaintiff was experiencing anxiety and

depression prior to him even being employed by BEKO and was even prescribed medication as a result. (Day 2 Trans. 276:9-14). Plaintiff failed to present any evidence that the anxiety or sleep loss that Plaintiff already dealt with, worsened due to his call with Mr. Fruth. Accordingly, Plaintiff has failed to show any actual injury and would therefore only be entitled to nominal emotional distress damages. *Wilson v. Taylor*, 733 F.2d 1539, 1547 (11th Cir. 1984); *Carey v. Piphus*, 435 U.S. 247, 248 (1978). Plaintiff's award for compensatory distress damages must therefore be remitted to reflect the evidence presented.

The jury's award for punitive damages must also be remitted. The Supreme Court has instructed courts reviewing punitive damages awards to consider three guideposts: (1) the degree of reprehensibility of the defendant's misconduct; (2) the ratio between the actual or potential harm suffered by the plaintiff (compensatory damages) and the punitive damage award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 116 S. Ct. 1589 at *1599, 134 L. Ed. 2d 809 (1996). The dominant consideration in the evaluation of a punitive damage award is the reprehensibility of the defendant's conduct. *Gore*, 517 U.S. at 575, 116 S. Ct. at 1599. To determine the reprehensibility of a defendant's conduct, a court must consider several issues: (1) whether the harm caused was

physical as opposed to economic; (2) whether the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; (3) whether the target of the conduct was financially vulnerable; (4) whether the conduct involved repeated actions or was an isolated incident; and (5) whether the harm was the result of intentional malice, trickery, or deceit, or mere accident. *EEOC v. W&O, Inc.*, 213 F.3d 600, 614-15 (11th Cir. 2000).

As it pertains to the reprehensibility of BEKO's alleged conduct, in considering the above-mentioned factors, this Court should remit Plaintiff's punitive damages award. As discussed in Section I above, there is no evidence that BEKO's actions were malicious.  For that reason alone, the punitive damages award should be remitted.  Further, while Plaintiff does claim that he suffered physical harm in the form of anxiety and loss of sleep, there is absolutely no evidence that any alleged malicious actions by BEKO caused that anxiety.  Plaintiff claims to have suffered damages from one isolated phone call. Plaintiff has not, nor can he allege any repeated wrongful conduct by BEKO.  To the extent Plaintiff has anxiety caused by BEKO, it was in connection with his resignation from BEKO, not due to any malicious acts.

The ratio between the compensatory damages award and the punitive damages award also favors remittitur. The Supreme Court has not imposed a "bright line"

ratio which a punitive damages award cannot exceed. *State Farm Mut. Automobile Ins. Co. v. Campbell*, 538 U.S. 408 (2003). Generally, single-digit multipliers are more likely to comport with due process than double-digit multipliers. However, the Supreme Court has found that an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety. *Pacific Mutual Life Insurance Co. v. Haslip*, 499 U.S. 1 (1991). Here, the jury's award of six times the compensatory damages award clearly crosses this line, especially given the lack of evidence that BEKO engaged in malicious or recklessly indifferent conduct.

Finally, this Court should look to the damages caps under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §2000e *et seq*., for guidance in reviewing the punitive damages award because, as established above, the award violates due process. Though Title VII caps are not instructive for Section 1981 claims, the Eleventh Circuit has found that the Title VII caps may be used as guidance when the punitive damages award violates due process. *Goldsmith v. Bagby Elevator Co*., 513 F.3d 1261, 1284 (11th Cir. 2008). Here, the jury's award deviates substantially from an analogous award of punitive damages under Title VII. BEKO has less than 100 employees. (Day 2 Trans. 332:7-12); (Day 2 Trans. 289: 23-25); (Day 2 Trans. 339: 5-7); (Day 2 Trans. 313: 20-23).  Accordingly, under

Title VII, damages would be capped at $50,000. 42 U.S.C. § 1981a(b)(3)(a). The jury's award here is $450,000, nine times that amount. Such an excessive award violates due process, and this Court should look to the Title VII cap to remit the punitive damages award.

For these reasons, this Court should remit both Plaintiff's compensatory and punitive damages awards.

## CONCLUSION

For these reasons, this Court should grant BEKO judgment as a matter of law on Plaintiff's claim for punitive damages and his Section 1981 retaliation claim. In the alternative, this Court should grant BEKO a new trial or remit Plaintiff's damages award.

Respectfully submitted this 3rd day of July 2024.

/s/ Jeffrey A. Schwartz
Jeffrey A. Schwartz
Georgia Bar No. 558465
Jake.Schwartz@jacksonlewis.com
Keely Jac Collins
Georgia Bar No. 252645
JACKSON LEWIS P.C.
171 17th St. NW
Suite 1200
Atlanta, Georgia 30363
Telephone: (404) 525-8200
Fax: (404) 525-1173

**ATTORNEYS FOR DEFENDANT**

## **CERTIFICATION OF COMPLIANCE**

In accordance with Civil Local Rules 5.1C and 7.1D, I hereby certify that

this document has been prepared in 14 point, Times New Roman font.

*/s/ Jeffrey A. Schwartz*
Jeffrey A. Schwartz
Georgia Bar No. 558465

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| MATTHEW REED | ) | |
|      Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | 1:21-cv-03563-WMR |
|    v. | ) | |
| | ) | |
| BEKO TECHNOLOGIES CORP. | ) | |
|      Defendant. | ) | |

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this 3rd day of July 2024, I have filed the foregoing **DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR JUDGMENT NOTWITHSTANING THE VERDICT OR, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL OR REMITTITUR** with the Clerk of Court using the Court's CM/ECF system, which will automatically send a copy to all attorneys of record.

/s/ Jeffrey A. Schwartz
Jeffrey A. Schwartz
Georgia Bar No. 558465

4893-6911-9950, v. 1