## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **MATTHEW REED** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION 1:21-cv-03563-** |
| **v.** | ) | **WMR-JCF** |
| | ) | |
| **BEKO TECHNOLOGIES CORP** | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

## PLAINTIFF'S MOTION AND BRIEF IN OPPOSITION TO DEFENDANT'S MOTION AND BRIEF FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR, IN THE ALTERNATIVE, MOTION FOR NEW TRIAL OR REMITTITUR

**COMES NOW** Matthew Reed, Plaintiff in the above-styled case, files this, his Motion and Brief in Opposition to Defendant's Motion for Judgment Notwithstanding the verdict or in the Alternative, Motion for New Trial or Remittitur. Mr. Reed shows the Court the following:

## STANDARD OF REVIEW

### A. New Trial

Pursuant to Federal Rule of Civil Procedure 59(a)(1)(A), a court may grant a new trial "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." A party may seek a new trial by arguing that "the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving; and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251 (1940); see also Weisgram v. Marley Co., 528 U.S. 440, 452 (2000). That said, the remedy of a new trial "is sparingly used." Johnson v. Spencer Press of Maine, Inc., 364 F.3d 368, 375 (1st Cir. 2004) (citation omitted). A district court has broad discretion in determining whether a new trial is warranted in a particular case. Hessen for Use and Benefit of Allstate Ins. Co. v. Jaguar Cars, Inc., 915 F.2d 641, 644 (11th Cir. 1990) ("Motions for a new trial are within the sound discretion of the district court . . . and [the Eleventh Circuit's] review of a district court's denial of a new trial involves determining whether the trial judge clearly abused his/her discretion.").

**B. Remittitur**

Beko alternatively asks that the Court order remittitur and reduce the jury's damages award because the award was excessive and violates due process.

"A traditional request for a remittitur . . . is governed by Rule 59." Goodloe v. Royal Caribbean Cruises, Ltd., 418 F. Supp. 3d 1112, 1130 (S.D. Fla. Oct. 1, 2019) (citing Johansen v. Combustion Eng'g, Inc., 170 F.3d 1320, 1331 (11th Cir. 1999)). "A remittitur is a substitution of the court's judgment for that of the jury regarding the appropriate award of damages. The court orders a remittitur when it believes the jury's award is unreasonable on the facts." Johansen, 170 F.3d at 1331 (emphasis in original). A remittitur is "the appropriate remedy where the jury's damage award exceeds the amount established by the evidence." Goldstein v. Manhattan Indus., Inc., 758 F.2d 1435, 1448 (11th Cir. 1985). It is a discretionary judicial act that implicates the Seventh Amendment's prohibition on the "re-examination of a jury's determination of the facts, which includes its assessment of the extent of plaintiff's injury." Johansen, 170 F.3d at 1328. A court may enter a remittitur only with a plaintiff's consent. Id. at 1329. "If the plaintiff does not consent to the remittitur, the court has no alternative but to order a new trial." Id.

## I.    BEKO IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW ON MR. REED'S CLAIM FOR PUNITIVE DAMAGES.

Beko alleges Mr. Reed is not entitled to punitive damages because of the following reasons: (1) Mr. Reed received several raises, (2) Mr. Reed was the highest-paid Production Technician, and (3) Mr. Reed's concerns were escalated to Mr. Fruth. (Doc. 95-1 p. 8). Beko's argument is without merit. A district judge explains the flaw in Beko's argument perfectly. The Court explained:

> Federal argues that Lopez could not have acted with malice or reckless disregard for Austrum's rights because he previously made the decision to hire and promote Austrum when working for Oxford Building Services, Inc. Federal argues that this fact creates "a strong inference" that Austrum's race was not a motivating factor for Lopez's failure to hire Austrum for a job with Federal. (DE 85 at 4.) While Federal was free to make this argument to the jury, the fact that Lopez did not previously discriminate against Austrum does not preclude a finding that Lopez later did intentionally discriminate against Austrum. Furthermore, the Court must resolve all inferences in Austrum's favor so it is irrelevant whether certain facts create "strong" inferences in Federal's favor. It is the province of the jury to accept or reject those inferences.

Austrum v. Fed. Cleaning Contractors, Inc., 190 F.Supp.3d 1132, 1135 (S.D. Fla. 2016).

The United States Supreme Court determined the circumstances under which a jury can award punitive damages in employment cases. The Supreme Court rejected the holding of the Court of Appeals for the District of Columbia that eligibility for punitive damages required a showing of "egregious" misconduct by the employer. Kolstad v. American Dental Ass'n., 119 S.Ct. 2118, 2124 (1999).

The Supreme Court emphasized that what was necessary to award punitive damages was not "a showing of egregious or outrageous discrimination" but only a showing that the employer acted with the appropriate state of mind. Id. at 2124. The appropriate state of mind meant acting "with malice or with reckless indifference to [Mr. Reed's] federally protected rights," § 1981a(b)(1), which, the Supreme Court explained, required a showing of either an evil intention to deprive a plaintiff of his federally protected rights or a conscious indifference to these rights. Id. at 2124-25. At a minimum, the Supreme Court explained, to be liable for punitive damages, "an employer must . . . discriminate in the face of a perceived risk that its actions will violate federal law." Id. at 2125.

The Supreme Court emphasized that this liability standard is higher than that for establishing a right to compensatory damages. *Id.* at 2124. Liability for punitive damages requires not merely a showing of intentional discrimination but a showing that the employer acted with "knowledge that it may be acting in violation of federal law." *Id.* at 2124.

At trial, sufficient evidence was admitted showing Beko knew that retaliating against Mr. Reed for complaining that a white employee received a raise was against his federally protected rights. Beko's non-harassment policy was admitted as Plaintiff's Exhibit 2 without objection. The policy states, "The Company will not allow any form of retaliation against individuals who report unwelcome conduct to

management or who cooperate in the investigations of such reports in accordance with this policy." (Exhibit 2 p. 1).

The punitive damage of $450,000 is reasonable because the degree of reprehensibility of Beko's misconduct is very high. Before trial, the parties stipulated that Beko draft the contract between them. (Doc. 71 p. 42). The plain language of the agreement states, "Should the Company decide to terminate your employment, it will provide you with a four (4) weeks advance notice." (Exhibit 1 p. 3 ¶ 11). The contract continues, saying, "The termination of the employment agreement can only be announced in writing." (Exhibit 1 p. 3). The contract further states, "This letter of Agreement may not be altered, modified, or amended, in whole or in part, except in writing signed by both parties." (Exhibit 1 p. 5 ¶ 16).

Beko's president, Mr. Til Fruth, violated the terms of the contract as a form of retaliation against Mr. Reed. Mr. Fruth retaliated against Mr. Reed simply because Mr. Reed asked him why a white employee got a raise, but he didn't. Beko provided a nondiscriminatory reason at summary judgment as to why Mr. Reed didn't get a raise. Beko failed to offer a nondiscriminatory reason at trial. The degree of reprehensibility of Beko's misconduct is very high because Mr. Truth is the policymaker for a company with 100 employees.

As president of Beko, Mr. Fruth decided not to follow Beko's harassment policy. Beko's harassment policy states, "If you feel that you have been subjected

to conduct which violates this policy, you should immediately report the matter **to any manager**." (Emphasis added) (Exhibit 2 p. 1 ¶ 2). On August 2, 2021, Mr. Reed sent a copy of his harassment complaint to a black manager named Kedrick Werts.

At trial, Mr. Fruth testified that he didn't allow Mr. Werts to investigate Mr. Reed's complaint. Mr. Fruth gave no nondiscriminatory reason why Mr. Werts couldn't investigate the complaint. Furthermore, Mr. Fruth testified that he didn't even read Mr. Reed's harassment complaint. Mr. Fruth's actions are very reprehensible.

At trial, the jury heard the testimony from Beko's Human Resource Manager, Ms. Melanie Jauch. Ms. Jauch sent Mr. Reed a letter claiming Beko finished its investigation. The letter accuses Mr. Reed of making combative gestures towards Mr. Andrew Davis. See (Exhibit 23). The jury had the opportunity to see the video. See (Exhibits 7, 8). The videos proved that Mr. Reed wasn't the aggressor. The videos also proved Mr. Davis's statements against Mr. Reed were false. See (Exhibit 21). There was ample evidence demonstrating that Beko's actions against Mr. Reed were malice or reckless disregard for his rights. The motion should be denied.

## II.    MR. REED PROVED EACH ELEMENT OF HIS SECTION 1981 RETALIATION CLAIM.

### a.  Mr. Reed presented sufficient evidence that he was subjected to an adverse action.

Beko argues that Mr. Reed failed to prove that he suffered an adverse employment action. Beko's argument is frivolous. At trial, the contract was admitted without objection. The contract states, "the termination of the employment agreement can only be announced in writing." (Exhibit 1 p. 3).

Beko's email terminating the contract was admitted into evidence. (Exhibit 22). Mr. Reed's email tells Beko that he hasn't provided a written notice terminating the contract was admitted into evidence. (Exhibit 13). Beko's written notice telling Mr. Reed that his contract is terminated is an adverse action.

Furthermore, Beko's August 9, 2021, email terminating the contract immediately was admitted into evidence. (Exhibit 24). This email is evidence of an adverse action.

### b.  Mr. Reed Presented Sufficient Evidence Of a "But For" Causal Link Between His Complaint and His Termination.

Beko argues that Mr. Reed failed to show a "but for" causation because Mr. Reed admitted Mr. Fruth asked him to resign in 2019 or 2020. Beko's argument is frivolous. Before trial, the parties stipulated the following facts in the proposed pretrial order, "On the morning of August 3, 2021, Tilo Fruth, Defendant's president, called Plaintiff to discuss Plaintiff's complaint regarding Andrew Davis." (Doc. 71 p. 42).

At trial, Beko's written email terminating the contract with Mr. Reed on August 3, 2021, was admitted into evidence without objection. (Exhibit 22). The plain language of the email tells the jury that the conversation on the morning of August 3, 2021, is the reason for the termination. The email states, "Hi Sean, to follow up on your **conversation with Tilo this morning**, this email serves as a confirmation that we accept your 2week notice to resignation." (emphasis added) (Exhibit 22). This email was sent on August 3, 2021 at 3:29 p.m.

No evidence was ever submitted at trial showing that Mr. Reed's conversation with Mr. Fruth in 2020 is related to the email on August 3, 20201. Mr. Reed never testified that he was pressured to send an email resigning from his position in 2020. Mr. Reed asking Mr. Fruth on the telephone on August 3, 2021, why a white employee received a raise, and he didn't, is the direct and proximate cause of why Beko sent an email to Mr. Reed terminating his employment on August 3, 2021.

### III.    BEKO IS NOT ENTITLED TO A NEW TRIAL.

### a.  Beko Is Not Entitled to A New Trial Because the Jury's Verdict Was Not Against the Weight of The Evidence.

Beko is not entitled to a new trial because the jury's verdict is not against the weight of the evidence. For the same reasons detailed above, Mr. Reed has presented sufficient evidence of each element of his Section 1981 claim to establish that he was entitled to punitive damages. Accordingly, this Court should deny Beko's request for a new trial.

### b.  Beko is Not Entitled to a New Trial Because the Court did not err in Allowing the Testimony of Phillip Carroll.

Beko's argument that the Court erred by allowing Mr. Carroll to testify is without merit. Not surprisingly, Beko doesn't cite one case from the Eleventh Circuit that supports its argument that the Court errored by allowing Mr. Carroll's opinion testimony. This issue has been well settled in our circuit. The former Fifth Circuit has explained:

> Witnesses may now be asked directly to state their opinion of the principal witness 'character for truthfulness and they may answer for example, "I think X is a liar." **The rule imposes no prerequisite conditioned upon long acquaintance or recent information about the witness**; cross-examination can be expected to expose defects of lack of familiarity and to reveal reliance on isolated or irrelevant instances of misconduct or the existence of feelings of personal hostility towards the principal witness.

U.S. v. Lollar, 606 F.2d 587, 589 (Fifth Cir. 1979). Cases decided by the old Fifth Circuit are binding on this Court. See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc). The Court made the right decision by allowing Mr. Carroll to give his opinion testimony concerning Mr. Fruth. The things Beko complained of could have been addressed during cross-examination. Beko had the opportunity to convince the jury that Mr. Carroll's testimony was unbelievable but failed to do so. The motion should be denied.

### c. THE COURT SHOULD NOT REMIT THE JURY'S DAMAGES AWARD.

### 1. Mr. Reed proved compensatory damages at trial.

Beko argues that Mr. Reed did not present sufficient evidence to entitle him to an award of compensatory damages for $84,724.46. Beko's argument is without merit. The parties stipulated to the jury verdict form. The verdict form asked the jury, "That Matthew Reed suffered damages because of the adverse employment action?" (Doc 83 p. 2). The jury was then asked, "We award damages of $84,724.46" (Doc. 83 p. 2). The verdict form did not ask the jury to distinguish between special and general damages.

At trial, Mr. Reed admitted his tax records into evidence showing that he lost wages because Beko fired him. See (Exhibits 14, 15, and 16). The compensatory damage amount of $84,724 includes special damages and general damages. At trial, Beko never asked Mr. Reed how much money he lost by being fired from Beko. Beko doesn't know what amount of the $84,724.46 is for pain and suffering and not back wages.

Furthermore, the fact that Mr. Reed was taking medication for depression doesn't disprove his testimony that being fired from Beko caused him emotional pain and suffering. The eggshell skull rule (AKA "eggshell rule" or "thin skull rule") is a principle in civil law that states that all victims should be fully compensated for their losses, even in situations where the victim was more

susceptible to injury due to a predisposing condition or preexisting injury. <u>See</u> <u>R.W. v. Bd. of Regents of the Univ. Sys. of Ga.</u>, 114 F. Supp. 3d 1260 (N.D. Ga. 2015) (The Court can find no reason that Plaintiff should be treated differently than others in terms of damages for emotional distress. That Plaintiff has pre-existing conditions of stress and depression does not necessarily mean that an expert witness is required to establish emotional distress damages). The motion should be denied.

**2. The punitive damage award of $450,000 doesn't violate the due process clause.**

**a. Reprehensibility.**

Reprehensibility is generally "[t]he dominant consideration in the evaluation of a punitive damages award[.]" <u>Goldsmith v. Bagby Elevator Co., Inc.</u>, 513 F.3d 1261, 1283 (11th Cir. 2008). To determine the reprehensibility of a defendant's conduct, a court must consider the following factors: "(1) whether the harm caused was physical as opposed to economic; (2) whether the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; (3) whether the target of the conduct was financially vulnerable; (4) whether the conduct involved repeated actions or was an isolated incident; and (5) whether the harm was the result of intentional malice, trickery, or deceit, or mere accident." Id. "There is no requirement that a certain number of the factors be present, but

reprehensibility grows more likely as more factors are present." Cote v. Philip

Morris USA, Inc., 985 F.3d 840, 847 (11th Cir. 2021).

As applied here, the first factor favors Mr. Reed because, as discussed above, he

suffered emotional harm. See Goldsmith, 513 F.3d at 1283 (finding that the

plaintiff's economic and emotional harm suggested the defendant's misconduct was

reprehensible); see also Williams v. First Advantage LNS Screening Sols. Inc, 947

F.3d 735, 751–52 (11th Cir. 2020) (noting Eleventh Circuit has at least twice

upheld "substantial punitive damages awards when the underlying compensatory

damages award was based either entirely or substantially on the plaintiff's

emotional distress.").

The second factor favors Mr. Reed because the harassment he complained of

jeopardized his safety. During the trial, a video was admitted into evidence. The

video showed Mr. Andrew Daivs pulling down his mask and harassing Mr. Reed

without following the six-foot pandemic protocol. The Human Resource Manager

admitted that it was known that Mr. Reed decided not to take the vaccine.

Although Mr. Daivs was in Mr. Reed's face with his mask down, the Human

Resource Manager accused Mr. Reed of being the aggressor. See (Exhibit 23).

The third factor---financial vulnerability weighs in Mr. Reed's favor. "A

determination of financial vulnerability cannot occur in isolation from a plaintiff's

relation to a particular defendant." Flying Fish Bikes, Inc. v. Giant Bicycle, Inc.,

181 F. Supp. 3d 957, 976 (M.D. Fla. 2016). Mr. Reed was vulnerable because he was susceptible to the "particular tactic deployed by" Beko. Id.; see also Sepulveda v. Burnside, 432 F. App'x 860, 865 (11th Cir.2011) ("[A]lthough [the plaintiff] was not financially vulnerable, he was vulnerable [because] he relied on [the correctional center's] policies to protect him from other inmates."). Mr. Reed had to rely on Beko to explain why he didn't get a raise, although another white employee received one. Mr. Reed was also financially vulnerable because Beko's president, Mr. Fruth, had the power to terminate the contract without following the terms of the contract. Mr. Reed had no one else to complain to about the retaliation.

### b. Ratio

The Supreme Court has "decline[d] . . . to impose a bright-line ratio which a punitive damages award cannot exceed." State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 425 (2003). The Supreme Court has said, however, that "[o]ur jurisprudence and the principles it has now established demonstrate . . . that, in practice, few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." Id. "As a rule of thumb, a 4:1 ratio will typically be close to the line of constitutional propriety and few awards exceeding a single-digit ratio to a significant degree will

satisfy due process.'" <u>Rubinstein v. Yehuda</u>, 38 F.4th 982, 998-99 (11th Cir. 2022) (quoting Williams, 947 F.3d at 763). These "suggested ratios," however, "were intended to be 'instructive,'" and "'[t]he precise award in any case . . . must be based upon the facts and circumstances of the defendant's conduct and the harm to the plaintiff.'" <u>McGinnis v. Am. Home Mortg. Servicing, Inc.</u>, 901 F.3d 1282, 1290 (11th Cir. 2018) (quoting State Farm, 538 U.S. at 425).

Beko argues that the punitive damage award of six times the compensatory damages award crosses the due process line. However, the ratio does not exceed a single-digit ratio "more likely to comport with due process." <u>State Farm</u>, 538 U.S. at 425. In light of the reprehensible facts and circumstances of this case noted above, the ratio here is proper. Beyond that, requiring a 1:1 ratio whenever a defendant asserts that the compensatory damages are "substantial" would impose a "bright-line ratio" that the Supreme Court has expressly declined to adopt. <u>Id.</u>

Beko otherwise points to no Supreme Court or Eleventh Circuit case disapproving of a single-digit ratio between punitive and compensatory damages, and this Court should decline to extend the law here. Given the extreme conduct at issue in this case, the ratio resulting from the jury's punitive damages award is not constitutionally excessive.

### c.  Civil Penalties in Comparable Cases.

The third Gore guidepost—civil penalties in similar cases—"considers the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases[.]" Cote, 985 F.3d at 849–50 (quotation marks omitted). This factor is "accorded less weight . . . than the first two guideposts." Id. at 850 (quotation marks omitted). The rationale for this guidepost is that a defendant may lack "adequate notice that its conduct could subject it to" a particular punitive damages award "if the difference between the civil or criminal penalties that were or could have been imposed and the punitive damage award is too great." Johansen, 170 F.3d at 1336–37.

Beko asks the Court to compare the punitive damages award to the statutory cap of $100,000 for compensatory and punitive damages under Title VII. See 42 U.S.C. § 1981a(b)(3).  The Court should not apply the Title VII cap by analogy to employment discrimination cases under § 1981. See Swinton v. Potomac Corp., 270 F.3d 794, 820 (9th Cir. 2001) (observing that, unlike Title VII, "Congress has not seen fit to impose any recovery caps in cases under § 1981 (or § 1983), although it has had ample opportunity to do so since the 1991 amendments to Title VII").

Furthermore, although the punitive damages awarded here are more than those available under Title VII for analogous conduct, the difference is not enough

to suggest that the punitive damages award violates due process. <u>Cf. State Farm</u>, 538 U.S. at 428 (finding the most relevant civil sanction to be $10,000, "an amount dwarfed by the $145 million punitive damage award."). Applying the Gore guideposts to the facts in this case, the punitive damages against Beko are not so excessive as to violate due process.

## **<u>CONCLUSION</u>**

For the reasons stated above, Beko's motions should be denied.

Wednesday, July 17, 2024

<u>s/ Michael O. Mondy</u>
Mr. Michael O. Mondy, Esq.
Georgia Bar No. 897950
Attorney for Plaintiff

**MICHAEL O. MONDY, P.C.**
235 Peachtree Street NE, Suite 400
Atlanta, Georgia 30303
Office: 404.492.9568
mondy@mondypc.com

## <u>CERTIFICATE OF FONT, TYPE, AND SERVICE</u>

I hereby certify that on July 17, 2024, I electronically filed with the Clerk of Court the flowing motion and brief, in Times New Roman, 14-point type, using the CM/ECF system, which will automatically notify all attorneys of record.

s/ Michael O. Mondy
Mr. Michael O. Mondy, Esq.
Georgia Bar No. 897950
Attorney for Plaintiff

**MICHAEL O. MONDY, P.C.**
235 Peachtree Street NE, Suite 400
Atlanta, Georgia 30303
Office: 404.492.9568
Facsimile: 404.737.8326
mondy@mondypc.com